Good morning, Your Honors. May it please the Court, Brianna Fuller on behalf of Tranette Evans. We're asking this Court to reverse denial of the suppression motion for two reasons. One, because the unnecessary investigation of the passenger measurably extended the duration of the stop. And two, because the patchwork of exceptions offered by the government do not justify the car search in this case. I'll touch first on the investigation of the passenger issue, and I would point out this is a narrow issue in several ways. One, in this case, there were no indications that the passenger herself had committed a traffic violation. Second, the officer stated no safety concerns relating either the passenger or the driver. And third, unlike the Diaz-Castaneda case, there was no legitimate reason to check the passenger's identification. And for those three reasons, there is no justification for this investigation into the passenger, Ms. Williams. You know, I was looking at Justice Ginsburg's decision in the Arizona-Johnson case, and she says unrelated questions don't pose a problem if they don't unreasonably delay the stop. Here, the stop was delayed by maybe, what, three to five minutes. So how do you deal with that case? Your Honor, the stop was ‑‑ I think the record indicates that the stop was actually delayed more than that. The record shows that the investigation ‑‑ Well, let's first take ‑‑ let's first assume for the answer to the question, or for your answer to the question, one of the officers testified that it took three to five minutes to check the passengers on the ‑‑ that passenger on the computer. Is that ‑‑ I think we have one case that said if it measurably delays it. And Justice Ginsburg said if it unreasonably delays it, is it? Unreasonably. If it unreasonably delays it. So how do we decide whether they keep you an extra five minutes for no reason, whether that then constitutes a seizure? Is that an unreasonable delay? How do you determine? Is seven minutes unreasonable? Is five minutes unreasonable? I think the Turbin case said you look at two things, Your Honor. You look first at the total length of the stop and second at the proportion of the stop. So the Turbin court said the entire stop was 14 minutes and the unrelated investigation was only four minutes. In this case, the record shows that the investigation of Ms. Williams, the passenger, started at five to six minutes in. As you said, the running of the warrant took three to five minutes. The other officer said it took four minutes. And then the arrest of Ms. Williams took another two to three minutes. So as even the government states in their brief, the investigation of Ms. Evans was five to six minutes. The investigation of the passenger was five to seven minutes. And in a case where it doubles the total length of the stop, I think if measurably extends the length of the stop means anything, certainly would mean the case where the length of the stop is doubled. So wasn't some of this overlapping? Because, I mean, I don't know what a police officer is supposed to do. He stops two people, right? And the passenger willingly hands over the ID as does Ms. Evans. So they go back and they run both on the computer. Do you think that's unreasonable to do under the circumstances? You Honor, Officer Escobedo testified that the investigation of Ms. Evans was entirely completed before they began the investigation, before they began running Ms. Williams. So I don't think there was overlap at all. And in this case, where there is no overlap. Tell me what was unreasonable about running the, after the passenger gives the police officer her ID, what's unreasonable about running that? I don't think there was any reason to request her ID in the first place. Right, but there's no complaint about that. That's not a constitutional violation. Your Honor, the unrelated investigation, I think the problem where it becomes unreasonable is because it doubled the length of the stop. Well, let me ask you this. If this one lady was out to go to a bridge party with four other ladies and was stopped, does that mean that the police have a right to ask every one of those people in the car for their identification, take an extra five minutes for every passenger? Would that be reasonable? Well, I think that's the concern is that if there's no reason to investigate the passenger. Doesn't that really come down to the basic question of whether the police, when they stop someone for passing a red light, can investigate every passenger in that car and can hold the driver there. And while they investigate every passenger, every time they stop anyone for a red light. I think that is the crucial question. And while I don't think the rule that I'm asking for is that they can never investigate the passenger. Again, we're assuming without any suspicion, any cause, any threat, whether the general rule should be. And, you know, otherwise going to come down to did it take three minutes this time and two minutes the next or four minutes the following time. It can only only be a violation if it results in a delay. But if it doesn't result in delay, even though they shouldn't do it, doesn't mean there's anything that can be done about it. Should the general principle be that police, without any any particular suspicion or anything, should be able to ask everybody in a car that stopped for crossing a red light, changing from one lane to another, that all passengers can be asked for their identification, have an investigation conducted of them, and that that's not an unreasonable delay that that time takes. What should the general rule be? Your Honor, what our position is is that the general rule should be that, no, they cannot investigate the passenger unless the passenger themselves have committed a violation, unless there's some safety concern that the police can articulate that they need to know who that passenger is, or, again, if they're asking if they need the passenger to drive the car away, and for that reason they need to know whether they're licensed. In this case, there was no such concerns. And so I think the general rule should be that, no, there should not be allowed to, the police should not be allowed to investigate the passenger in the run-of-the-mill case where none of those concerns are implicated. We don't have a case that squarely presents that type of problem, as Judge Wardlaw pointed out. This isn't a case where the passenger's complaining about her right being violated. But it comes up more normally the way it comes up here with the driver complaining that that was not a reasonable delay because it was not reasonable to keep her an extra five minutes or, if there were four passengers, an extra 20 minutes, because it was just on the theory that we might as well investigate this person. That's correct. I think that shouldn't be the general rule, that all of the passengers can be. Or else it's going to be a significant delay in the case you're talking about, where there's four passengers, where there's six people in a van or ten people, they could hold them for an hour. It doesn't make sense that that should be the rule, where there's no suspicion of those passengers. But should we be focused on the facts here? I'm sorry? Should we be focused on the facts of what happened in this case? We should. And that's why I'm saying this is a narrow. I don't think we should try to have a rule that applies to more than this case, so that if we say two minutes is okay, that the next time we say is three minutes okay. The problem with the general rule is that it depends on the circumstances of each case, whether it was reasonable. No. The rule is if there's no suspicion and there's no threat to safety and all there is is a passenger. Are we here at a point where there's going to be inevitable discovery anyway, because they're going to impound the car? If they hadn't investigated the passenger, then they would have had to simply cite Ms. Evans and let her go on her way. There's no reason to think the car would have been impounded if the passenger's investigation hadn't led to the warrant and the endangered missing adults notice. But why do you say that? Are you saying that because Ms. Evans' furtive gesture occurred while the passenger was being investigated, or what's the basis for your saying that? That's the basis for saying it, because that chain of events didn't happen until the five to seven minutes that the police were occupying investigating the passenger. If I can, I've only got 20 seconds left. If I could reserve those. Good morning, Your Honors. I'm a police employee at Beyonce Kim for the United States. From the moment that the police pulled over the defendant, in this case, during an entirely routine traffic stop, the police acted in a reasonable and measured way that appropriately responded to the developments as they occurred during the detention. The routine is that the police always check the identification and records of passengers riding in a car with someone who speeds or violates a red light ordinance. Your Honor, there's no evidence in the record whether that is a routine. I thought you said they acted in a routine manner. Excuse me. I thought I said measured and reasonable manner that appropriately responded. But I think that there wasn't anything that wasn't routine about this detention, either. Well, frankly, that's what I'm concerned about. If you say the routine thing is, and this is a reasonable way to act, that every time there are passengers in a car and a driver commits a traffic offense, that that's a good reason to investigate all the passengers. Your Honor, what happened in this particular case is that there was one other passenger driving in the car. And the police officer, at the same time he asked for the driver's identification, asked for the passenger's identification. Well, if there had been four, it would have been at the same time he would have asked also. That's not clear, Your Honor, whether if there were other passengers, whether those identifications would have been asked for as well. But the passenger in this case voluntarily, without any objection, gave. Well, no, not voluntarily. She was asked to do something by the police. You may think that's voluntary. But most people, when they're asked to do something by the police, feel they should do it. That may be, Your Honor. But the case law does focus in on that fact. In the Supreme Court case law, the case that Judge Fletcher was discussing and in other cases, it's relevant that there's no objection at all from the passengers. But they didn't say to her, may we take your card and go back and run it through the computers and look at what other offenses you may have committed. All they said is, may we see your license. That's correct, Your Honor. And then the license was provided. So she did not consent to the extent of that search. Yes. And the case law says, Your Honor, clearly that the running of that search, based on the identification that's been provided, does not implicate the Fourth Amendment. What if the passenger said, when they asked her for her identification, she said, well, that's none of your business? What would have happened then? I don't know what would have happened, Your Honor. It's possible that the police officer would have left it right then, right where it left it at that. But in this case, the passenger did provide the identification. The police officer ran both identifications, one after the other. Judge Wardlaw asked a question about whether there was any kind of overlap between what was done with respect to running the driver's identification and running the passenger's identification. And I think to answer that question is to show why these cases are so incredibly rich and fact-dependent. I think that there was overlap. The record states that one identification was run after the other. But during the time when the passenger's identification was being run, had that passenger's identification not been run, time would have been spent writing up a ticket for speeding and then processing that ticket and then dealing with all of that. And so that would have cut into the total length of time of the detention. In other words, Your Honor, the total length of the detention may not have ended up being any longer or significantly longer had it just proceeded without any running of the passenger's identification. Would it have made any difference if the officer had said, well, I always get the ID and run a wanton warrant on every passenger. Would that make a difference? I don't know that it would have made a difference. I think that it might have heightened Judge Reinhart's concern. But there's no evidence in the record that this was either a routine of this police officer, of this police agency, or of the police generally. But in this particular case where there was one passenger, an identification was asked for and it was obtained. After the ---- And the officer testified that that took three to five minutes, as I recall. Yes, Your Honor. One said three to five. Yes. The running of the passenger's identification, Your Honor, took approximately three to five minutes. And then to arrest the passenger took another, I believe it was two to three minutes. And that's how we arrive at the five to seven minutes of elongation. But as I was explaining with respect to Judge Wardlaw's question, it's not clear whether that really did lengthen the stop if we were to go back and figure out what would have happened had the passenger's identification not been run. But in total, what we end up with, based on this record, is a stop that lasted approximately ten minutes in total. And that is ten minutes until the time when the decision was made to arrest the passenger and the passenger was arrested. And that is simply a reasonable amount of time for a detention. This Court in the Turvin case ---- Well, but is it a reasonable time for this particular detention or for detentions in general? Well, I would say that it is for this particular detention, Your Honor. And I think that in order to grasp that, I think it's helpful to look at the times involved in other cases that have been cited by this Court. For example, in the Turvin case, that detention lasted approximately 14 minutes, four of which was taken up, I believe, by the additional questioning. In the Mendez case, the questioning or the detention took approximately eight minutes. And so what we have here, even with the elongation and the additional running of the passenger's identification, is a stop whose length lasted well in line with what this Court has found acceptable in other cases. If we were to find that this disagreed with you and we were to find that this was inappropriate, would there have been an inevitable discovery which kind of cures everything? We would submit that there would be, Your Honor. I mean, our first argument is that that argument's been waived. But just addressing the question, we would submit that there would have been an inventorying of this vehicle once it had been determined that ---- and let me be clear about this ---- once the passenger had been determined to have a warrant and once the driver had been determined to have the pipe. At that point, both defendants are going to be arrested and the car is going to likely be impounded and then inventory searched. But our first position is that the Court doesn't need to reach the inevitable discovery, which admittedly, because it wasn't raised in the district court, isn't that well fleshed out. I don't think this Court needs to reach that issue, because in this case, after the pipe was recovered and this is a pipe with marks on it indicating usage, a drug pipe, we would submit that it's reasonable to believe that evidence relevant to the crime of the arrest, namely the possession of this drug pipe, will be located in the vehicle. And I'll be very specific about what I'm thinking of. I'm thinking about the drugs that were used as part of this drug paraphernalia, the crack cocaine, which, in fact, was recovered. Additional drug paraphernalia was recovered. And even if the subsequent search can't be justified under the Gantt search incident to arrest relevant to the crime of arrest, we think that there is certainly probable cause at this point in order to conduct an automobile exception search. So I don't think that the Court needs to reach the inevitable discovery question. Your Honors, with respect to the last items that were obtained, and the fact that there were three separate searches and seizures in this case, I think underscores that the police did act in a measured way that, with respect to the very last search and seizure of the two bags of trash, first of all, I think that even though the police officers obtained those trash bags pursuant to an inventory search, they would have been justified in obtaining those bags or searching them, which were just located on the back seat of the car, not in the trunk, pursuant to the automobile exception. But with respect to that seizure, the appellant argues that there weren't sufficiently detailed standards guiding the inventorying and impounding of the car. And we would submit that there were, under this Court's case laws, cases, namely the Mancera-Londano case, that states very clearly that the inventory policy does not need to be written. It can be oral. And also the Bertine case and the Supreme Court Wells cases, which make very clear that the kind of guidance that the policy needs to provide doesn't need to detail exactly what the police officers are supposed to do. It can accord the police officers substantial discretion to exercise, based on the very specific facts before them. Unless the Court has any other questions. Thank you, counsel. Thank you. I'll cover two points very quickly, and I'll speak fast. You don't have to. Judge Fletcher's question about inevitable discovery. The inevitable discovery discussion in the briefs is only after the pipe had been found. That's a different circumstance than would it have been inevitable discovery if the passenger's ID had not been investigated. I think it's clear that the officer said with regard to if the passenger's ID hadn't been involved, all that was left, as far as Ms. Evans, was to either warn her or to cite her and let her go. What does it mean that Ms. Williams was noted as an endangered missing adult? The record isn't clear about that. I've done just my individual research. It's similar to a missing child's report. It's something that the officer said was very unusual, and they stopped to look at it. He called his training officer over. That's part of why it took so long, I think, in this case, because it was a somewhat unusual alert to come up. But my understanding is it's similar to a missing child, but it's for adults. And just briefly with regard to the drug paraphernalia giving probable cause to the more full search of the car, again, this is a narrow case because this was – there was no evidence that the pipe had recently been used. Neither of the occupants of the car were under the influence. There were no remnants of drug use. There was no odor of drug use. And most importantly, perhaps, there was no testimony that would support this grander inference that the government would ask this Court to draw. Unless the Court has questions, I'll submit. Thank you. Thank you, counsel. The case just argued will be submitted. The Court will stand in recess for the day. All rise. This Court for this session is adjourned. Thank you.
judges: Fletcher B. , Reinhardt, Wardlaw